(32 Misc. Rep. 434.)

### HAMLIN v. STEVENS et al.

(Supreme Court, Special Term, Onondaga County. August, 1900.)

1. WILLS—CONTRACT TO WILL.

Testator, who was a man of wealth, visited his brother, who was in poor circumstances, and, taking a liking to the defendant, who was a nine year old son of the brother, had some talk with the brother about taking the boy to live with him. About a year later the defendant went to reside with the testator, and was supported and educated by him, and afterwards employed in his business and spoken of as his son. Testator had two daughters, but no son. Defendant's mother, who was discredited by the court, testified that the testator came to see them a second time, and promised that, if the defendant would come and live with him, he should share in his estate equally with his children; and testator's wife swore that he did not visit the brother a second time. Letters claimed to have been written by testator, showing an intention to allow defendant a child's share in his estate, were not produced, and a letter apparently showing a contrary intention was introduced. *Held* not sufficient to show a contract by testator with the parents of defendant to will the son a share in his estate.

2. WILLS—CONSTRUCTION—RESIDUARY ESTATE.

Where a testator makes a specific bequest to a nephew, who has lived with him and been treated as his son, the latter is not entitled to share in the residuary estate under a provision in the will that it should be equally divided among testator's children.

**3. SAME—REMAINDERS.**
Where a will provides that the testator's executors shall control the property for the benefit of testator's wife during her life, and that at her decease it shall be divided equally among his children, the remainder vests in such children at the death of the testator.

Action by Charles A. Hamlin, as administrator of the estate of Lyman Stevens, against Lyman A. Stevens and others, for the construction of a will.

Homer & Waldo Weston, for plaintiff.

Thomas K. Smith and John W. Reynolds, for defendant Lyman A. Stevens.

Charles G. Baldwin, for defendants Julia E. Stevens and others.

William Nottingham, for defendant Commercial Bank.

B. T. Benedict, for defendant Stephenson.

J. L. Cheney, for defendant First Nat. Bank.

HISCOCK, J.    The testator, Lyman Stevens, died several years ago, leaving a considerable real and personal estate, and a last will and testament, whereby he appointed his wife, Julia E. Stevens, and his son-in-law, one Loomis, executors.    Subsequently said executors accounted and resigned, and plaintiff was appointed in their places as administrator with the will annexed.    Said testator left, him surviving, his wife, and, as his only heirs at law and next of kin, two daughters, Grace E. Loomis and Mary S. Hamlin, each of whom had children; also, the defendant Lyman A. Stevens, a nephew, who alleges that he had been informally adopted by his uncle under a contract between the latter and his parents whereby he was to share equally with the aforesaid daughters in any estate the testator might leave.    The will, after making certain specific bequests, including one of $6,000 to said nephew, contains the following residuary clause, of which alone interpretation and construction are sought herein, viz.:

"As to the entire residue of my estate, both real and personal, my executors are instructed and required to administer, execute, and keep employed all that remains of my estate for the use, benefit, and comfort of my beloved wife, Julia E. Stevens, during her natural life, or as long as she may live or survive me; and power is herewith given or conferred, as far as it can be legally given and conferred, to transact and carry on any business, to sell real estate, and to do all other acts connected with my estate or relating thereto, and at the decease of my wife the residue remaining of my estate shall be divided equally between our children or their heirs."

I will take up first the claims of the defendant Lyman A. Stevens. There are many facts in the history of his relations with his uncle which are either undisputed or unquestionably established by the evidence, and some claimed by him have not, in my judgment, been proven.    In 1868 he was a child of about 10 years, living in a small place in Ohio, with his parents, who were small farmers, of very modest means, and having other children.    The deceased was his father's brother, living in the city of Syracuse,—a man apparently of prominence, and certainly very well to do.    He had two daughters, and no son, and no reasonable prospects of having one. He visited Ohio with his wife in the fall of 1868, was pleased with

the nephew, and then had some talk with the parents about taking him home. No plan for doing this was perfected then, but the next year the nephew came to live with them. He was taken into the testator's family, and thenceforth treated as a son and a member thereof. He was clothed, boarded, supported, and kept in school until he was 19 years old. When he became older he helped his uncle about his business matters, and in some of them acted as his representative and spokesman. He was referred to by his uncle in terms of high regard, and as his "son," or the "only son he had." His uncle gave him what small sums of money he asked for, and after a certain age a regular allowance or wages. The defendant's mother claims that in January, 1869, the testator came a second time to the home, and agreed with the father, in substance, that, if defendant would come and live with him until he was 21, he (the testator) would clothe, support, and educate him, and at his death leave his estate to him, share and share alike with his own children, and that it was pursuant to that arrangement that defendant went to live with his uncle. This is the only direct evidence in support of this contract. Another witness testified that long subsequently testator told him that he intended to dispose of his estate in favor of the defendant to the above extent, but I may briefly dismiss the evidence of this witness by saying I do not credit it. The testator's wife contradicts the testimony of defendant's mother by her evidence that her husband was not in Ohio at the time in question. A letter written by the father of defendant just before the latter went to live with his uncle, and just after the agreement or promise in question is claimed to have been made, seems to me inconsistent and out of tune with the provision for defendant's sharing in his uncle's estate now claimed. Some letters in which the testator is claimed to have acknowledged his obligation to make his nephew one of his legatees have disappeared, although others written by him at about the same time are produced.

Upon the evidence and facts thus outlined, I am unwilling to find as a fact that any bargain was made by the deceased with the parents of the nephew, whereby the former agreed, or intended or undertook to agree, that the latter should have a certain definite share or proportion of his estate, or whereby he bound, or undertook or intended to bind, himself to make the latter one of his testamentary beneficiaries. An agreement of that kind, assuming it could be made as urged by defendant, might be a pretty serious or embarrassing one. No one could tell when it would go into effect, or how much it would mean. There was no practical way, at least, to hold the parents or the boy up to their part of it, if they should see fit at any time to withdraw from its performance. It meant taking away a large fraction of the uncle's estate from those who were his natural heirs. Such a contract ought to be clearly and satisfactorily established, and I do not find that that has been done in this case. I think it much more reasonable to assume that the parents of the defendant believed that his chances and opportunities in life would be greatly improved by going to live with his uncle; that, possessed of comparatively little means, and having other children to rear and educate,

they felt that by letting their son go he would secure additional advantages, which would compensate them and him for the change, and that his uncle would practically make him his own son, and that, without any definite undertaking or promise, at some time, in some way, he would give him some of his property, as in fact he did do. This conclusion upon the question of fact presented renders it unnecessary to discuss the various questions of law which have been presented upon this subject.

Neither do I think the defendant can be regarded as one of the "children" made residuary legatees in the clause already quoted. That word, as I am well aware, has a somewhat elastic meaning in wills, but no law has been called to my attention warranting a decision that it includes the nephew in this case. Furthermore, the testator, by a prior clause, had already made a specific bequest in favor of the defendant as his nephew, indicating very clearly that in making his will he intended to regard and describe him as such, and not as one of his children.

I pass now to the construction of the residuary clause, about the meaning of which, in the end, there does not seem to be much difference of opinion among the people interested. The first question is as to where the title to the property vested upon the death of the testator. I have no doubt that the remainder, subject to the life interest of the wife, vested in the two daughters upon the decease of the testator, the enjoyment thereof being postponed until the death of the life beneficiary; that the words "or their heirs," after the word "children," in the residuary bequest, do not change this construction, both children having been alive at the testator's decease. Nelson v. Russell, 135 N. Y. 137, 31 N. E. 1008. Some question might be raised, under the residuary clause, as to where the title to testator's estate lodged during the life of his wife,—whether, under the language used, it was vested in his executors, under a trust to administer the same for the benefit of his wife during her life, or whether the title to the entire estate vested in his children, subject only to a power upon the part of his executors to do certain things for the benefit of his wife. That question, however, is not important, under the facts of this case, and is not pressed. In any event, the children at least took a vested remainder, subject to a provision for their mother for life. No question is made but that the executors had power under the will to resort to the principal or corpus of the estate, if necessary to furnish the wife with a suitable support. I think none could well be made, and the estate of the children is subject to diminution in this manner and to this extent. Neither is any question raised but that the power to carry out the provisions of the will, and to execute conveyances of the real estate, passed to plaintiff, as administrator with the will annexed.

In accordance with the views herein expressed, findings and a decree may be prepared and submitted; the question of costs being at that time considered. Ordered accordingly.